IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CE DESIGN, | ) | No.   07 C 3340 |
| | ) | |
| Plaintiff, | ) | |
| | ) | The Honorable William J. Hibbler |
| v. | ) | |
| | ) | |
| BEATY CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

CE Design has sued Beaty Construction for violation of the Telephone Consumer Protection Act. CE Design now seeks to certify this matter as a class action pursuant to Federal Rule of Civil Procedure 23. For the reasons set forth below, CE Design's motion for class certification is GRANTED.

### I.     Factual Background

In August 2003, Beaty Construction wanted to sell some of its excess inventory, namely 100 hardwood crane mats.[1] Beaty Construction hired ProFax to send out—via facsimile—an advertisement for the mats to approximately 2,257 businesses. Andrew Barnett, a ProFax employee, testified Beaty Construction gave ProFax a list of targeted businesses and fax numbers. CE Design was a recipient of one these faxes. CE Design claims it had no prior business relationship with Beaty Construction, no interest in

---

[1] Hardwood crane mats are wooden planks that are placed on the ground so cranes can travel over rough terrain. Pl. Mot. for Class Cert. Ex A. (Beaty Dep. at 7.)

1

purchasing the mats, and the fax was wholly unsolicited. Accordingly, CE Design contends Beaty Construction violated the Telephone Consumer Protection Act, which forbids sending unsolicited advertisements to fax machines. 47 U.S.C. § 227(b)(1)(C). Beaty Construction does not dispute that it hired ProFax to send the faxes.

Given the large number of faxes sent by Beaty Construction, and thus the large number of potential plaintiffs, CE Design argues this dispute would be best resolved via class action and has proposed the following class definition:

> All persons who, in August 2003, were sent a fax from Beaty Construction, Inc., stating, "Hardwood Crane Mats Used 1 Time Description 16' X 4' X 8 with cutouts" for "$2300.00 each F.OB. Lafayette, Indiana" and listing 317-835-2254 as the telephone number to call for information.

(Pl. Mot. for Class Cert. at 5).

## II. Standard of Review

A plaintiff seeking class certification has the burden proving that the proposed class meets the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Herkert v. MRC Receivables Corp.*, No. 08-C760, 2008 U.S. Dist. LEXIS 98159, at *6 (N.D. Ill. Dec. 1, 2008). Under Rule 23(a), a class may be certified if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Failure to satisfy even one of these elements precludes class certification. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993).

After the plaintiff has passed the initial Rule 23(a) threshold, the plaintiff must satisfy one of the conditions of Rule 23(b) in order to gain class certification. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). Here, the plaintiff contends it has satisfied Rule 23(b)(3), which requires a showing that common questions

2

of law and fact predominate over any questions affecting only individual members and that a class action is a superior method for adjudicating the dispute. Fed. R. Civ. P. 23(b)(3). Finally, the Court can not simply take the plaintiff's well-pleaded allegations as true. The Court must probe beyond the allegations in the complaint, and resolve the factual disputes bearing on class certification and the requirements of Rule 23. *Sazbo*, 249 F.3d at 676-677.

### III. Analysis

The Telephone Consumer Protection Act (TCPA) forbids sending unsolicited advertisements to fax machines. 47 U.S.C. § 227(b)(1)(C). During the debates regarding the "junk fax" provision of the TCPA, Congressman Edward Markey (D-MA) stated:

> Every time someone junk faxes you, it is your paper that is coming out of the machine. You are paying for that paper. Your machine is tied up. It is absolutely one of the most irritating things to people, to have to pay for someone else coming into your home or your business when you do not want them there. It is essentially a tax which is paid by the recipient of something that they never asked for in the first place. This is something that ultimately takes up precious time as well....important faxes are lost in the middle of the pile of junk faxes ...the recipient of a junk fax pays for the fax paper and printer costs ...

151 Cong. Rec. H 5262, 5264 (2005). The damages CE Design alleges in its complaint mirror the ills Congress sought to reduce:

> [The] receipt of Defendant's unsolicited faxes advertisements caused [CE Design and the potential plaintiffs] to lose paper and toner ... Defendant's actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendant was using Plaintiff's fax machine for Defendant's illegal purpose. Defendant's actions also cost Plaintiff's employee time as Plaintiff's employees used their time receiving, routing and reviewing Defendant's illegal faxes...

(Compl. ¶ 26). CE Design argues its damages are not unique, and therefore, "everyone who was sent one of [Beaty Construction's] advertisements is a class member." (Pl. Mot.

3

for Class Cert. at 6). But, before the Court can grant class certification, CE Design must show that it has satisfied the requirements of Fed. R. Civ. P. 23(a).

A.  *Numerosity*

The first requirement for class certification is numerosity. Federal Rule 23 mandates that the potential plaintiffs in a class action must be so "numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no bright line test for numerosity, "a class of 40 is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002); *Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000)("While there is no threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes."). Here, the proposed class is everyone who received one of the faxes for hardwood crane mats in August 2003, *i.e.*, 2,257 businesses. Beaty Construction claims the list stating the names of these businesses has been lost or destroyed. Therefore, Beaty Construction argues numerosity is not present: "numerosity of class members cannot be shown simply by referring to an invoice with the total number of potential recipients of a fax." (Def. Resp. Br. at 7.) This argument is not persuasive.

First, the Court acknowledges there is no evidence that the list of targeted businesses was destroyed with a nefarious purpose. Nevertheless, a defendant can not escape liability simply by destroying the list of its victims. *See, e.g., Appleton Elec. Co. v. Advance-United Expressways*, 494 F.2d 126, 139 (7th Cir. 1974)("class actions can not be defeated by destroying records."). For example, in *Sadowski v. Med1 Online LLC.*, the plaintiffs accused the defendants of sending out junk faxes in violation of the TCPA

4

and sought class certification. No. 07 2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill. May 27, 2008). In response, the defendants claimed numerosity was not satisfied because the list of potential plaintiffs had been destroyed: "[defendant] claims that plaintiff's class size amounts to nothing more than speculation because the list of specific fax numbers that received the faxes at issue no longer exists." *Id.* at *8. The court rejected this argument.

Although the plaintiff could not produce a specific list of businesses, the court accepted the plaintiff's assertion that the class would meet the numerosity requirement. *Id.* The court reasoned that a good faith estimate can be sufficient where the class members are not readily ascertainable: "While we agree that plaintiff's allegations regarding numerosity amount to estimates, we find that they amount to more than mere conclusory allegations or speculation." *Id.* The court noted that "common sense allows us to infer" that a "good number" of the more than 300,000 junk faxes allegedly sent by the defendant were received by Illinois residents. *Id.* Finally, the court found that denying class certification would unfairly punish the victims, especially where "the missing list of recipients was last in defendant's possession." *Id.* at *9.

This reasoning was recently echoed in *Heckert v. MRC Receivables Corp.*, No. 08C760, 2008 U.S. Dist. LEXIS 98159 (N.D. Ill. Dec. 1, 2008). In *Heckert*, the plaintiffs alleged that the defendants had a policy of violating federal and state law by: (1) suing Illinois residents without attaching the signed credit card agreement to the complaint; and (2) initiating lawsuits after the statute of limitations had expired. *Id.* at *5. The defendants opposed class certification on the grounds that numerosity was not satisfied. *Id.* at *9. According to the defendants, it would be impossible to tell whether the

5

potential plaintiffs' claims were time-barred because there was no master list recording the identity of the plaintiffs or when the plaintiffs signed their credit card agreements. *Id.*

Just as in *Sadwoski*, the court rejected the notion that a master list of potential plaintiffs is necessary for class certification: "A class is identifiable if its members can be ascertained by reference to objective criteria. It is not fatal for class definition to require some inquiry into individual records, as long as the inquiry is not so daunting as to make the class definition insufficient." *Id.* at 10. The court determined that the statute of limitations problem could be remedied, and thus a potential class identified, by using the dates of the credit card agreements as reported in the affidavits of the individual plaintiffs. *Id.*

Here, as in *Sadowski* and *Heckert*, the Court will not bar class certification because the defendant has lost or destroyed the list of its alleged victims. Beaty Construction does not deny that it faxed its advertisements to more than 2,000 businesses. Moreover, there is some evidence that Beaty Construction may not have confined its faxes to businesses with which it had an existing relationship. Indeed, Dan Beaty—the President of Beaty construction—testified he was simply casting a wide net with the advertisement: "It was more about, you know, just making people aware that we had this excess inventory up there." (Beaty Dep. at 14). CE Design argues—and the Court agrees—that a potential class can be defined by reference to objective criteria, in this case, the defendants conduct, *i.e.*, businesses that received an unsolicited fax from Beaty Construction in August 2003. Moreover, the potential plaintiffs that come forward will have to represent to the Court—via affidavit and under the penalty of perjury—that they received the fax in question on the dates in issue.

The Court finds it plausible that at least 40 businesses received unsolicited faxes from Beaty Construction, thus satisfying the numerosity requirement. But, if CE Design is unable to locate enough businesses willing to join this litigation, the Court will have no qualms in granting a motion to decertify the class. *See, e.g., Pennington v. Ward*, No. No. 85 C 6327, 1986 U.S. Dist. LEXIS 22910, *1 (granting conditional class certification and noting: "When in doubt about numerosity, courts often certify the class, with the option under Fed. R. Civ. P. Rule 23(c)(1) of decertifying if it later appears that joinder was practicable.").

B.  *Commonality*

Commonality requires class actions to contain "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied by showing a common nucleus of operative fact." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Common nuclei of fact exist where "the defendants have engaged in standardized conduct towards members of the proposed class." *Id.* Beaty Construction argues class certification is inappropriate because the issue of whether some businesses consented to receive the faxes will be an individualized inquiry. On this matter, Judge Bucklo's recent decision in *Hinman* is instructive.

In *Hinman*, the defendants were accused of sending out 3,000 faxes in violation of the TCPA. 545 F.Supp. 2d at 807. The defendants claimed commonality was not present "because the TCPA applies only to 'unsolicited' faxes and individualized analysis is required to determine whether each class member consented to transmission of the faxes in question." *Id.* at 806. The court, however, found that the plaintiffs satisfied the commonality requirement:

7

> Seventh Circuit precedent teaches that commonality and typicality are generally met where, as here, a defendant engages in a standardized course of conduct vis-à-vis the class members and plaintiffs' alleged injury arises out of that conduct. [The defendants'] fax broadcasts were transmitted *en masse* based on the 'leads' list compiled several years earlier. Under the circumstances, the question of consent may rightly be understood as a common question. The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification.

*Id.* (internal citations omitted). The Court finds this reasoning persuasive and thus reaches the same conclusion. Beaty Construction's actions regarding each potential plaintiff were uniform and routine. For example, each potential plaintiff received the exact same advertisement from the same third party, in the same month of the same year. In addition to the common fact pattern, each potential plaintiff will be bringing suit under the same statute (the TCPA). CE Design has met the commonality requirement.

C.  *Typicality*

Typicality is satisfied if the class representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokley-Van Camp Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Typicality is determined with "reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). In this case, the same conduct that gave rise to the claims of CE Design—Beaty Construction's practice of allegedly sending out unsolicited faxes—gives rise to the claims of the other potential plaintiffs. Moreover, all of the claims of the potential plaintiffs would be based upon the same legal theory, *i.e.* violation of the TCPA. Accordingly, the Court finds that CE Design has satisfied the typicality requirement. *See, e.g., G.M. Sign, Inc., v. Franklin Bank, S.S.B.*, No. 06-C949, 2008 U.S. DIST LEXIS

8

79827, at *9-10 (N.D. Ill. Aug. 20, 2008) (finding that plaintiff satisfied typicality requirement where plaintiff "is a party identified in the fax logs as a recipient of the advertisement at issue. Since the course of conduct that produced [Plaintiff's] claim also produced the claims of the class, and [plaintiff] advances the same TCPA claim that will be brought by the class, [plaintiff] claim is typical of those of the class.").

D.  *Adequate Representation*

The Federal Rules require that the representative party fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). A "class is not fairly and adequately represented if the class members have antagonistic or conflicting claims." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Beaty Construction contends CE Design is wholly unprepared to carry its burden as the class representative because: (1) CE Design waited too long to bring this lawsuit; (2) Problems "with the credibility of CE Design's president, Jon Pezl ... render plaintiff unfit to act as a class representative"; and (3) CE Design has a close relationship with class counsel which "raises doubts as to whether plaintiff can be a strong advocate for a class as opposed to seeking to please its attorneys." (Def. Resp. Br. at 9, 12). The Court appreciates Beaty Construction's "concern" for the other potential plaintiffs, but these arguments are without merit.

CE Design initiated this lawsuit approximately three and a half years from the date it received the fax in question. Beaty Construction argues that in junk fax cases, potential plaintiffs may discard or lose evidence well before the expiration of the four-year time limit. This may be true, but the statute of limitations under the TCPA is four years. The Supreme Court cautions that just because, "Congress may not have foreseen all of the consequences of a statutory enactment [it] is not a sufficient reason for refusing

to give effect to its plain meaning." *Union Bank v. Wolas*, 502 U.S. 151, 158, 116 L. Ed. 2d 514, 112 S. Ct. 527 (1991). The Court will not dismiss this case simply because CE Design filed its lawsuit towards the end of the statutory period. The appropriate forum for debating whether the statutory period should be reduced is on the floor of the House of Representatives, not the District Court.

Next, Beaty Construction asserts that CE Design is an inadequate class representative because the president of CE Design—Jon Pezl—is dishonest. Certainly, honesty is an important trait when considering a class representative. *See, e.g., Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990) (denying class certification in light of plaintiff's false deposition testimony and noting, "A plaintiff's honesty and integrity are important considerations in allowing him to represent a class."). The thrust of Beaty Construction's argument is that Pezl falsely represented CE Design's membership in certain trade organizations.[2] Specifically, Beaty Construction claims it sent CE Design an interrogatory asking whether CE Design belonged to any trade organizations, and Pezl responded "none." (Def. Resp. Br. at 9). According to Beaty Construction, Pezl contradicted this assertion in his deposition by "failing to disclose CE Design's membership in the Blue Book." (*Id.*). In response, CE Design argues that Beaty Construction's interrogatories *did not even ask* whether CE Design belonged to any trade organizations and Pezl's deposition testimony was accurate.

The Court notes that there is some confusion regarding CE Design's interrogatory responses. The source of this confusion is CE Design's failure to accurately transcribe the interrogatory questions when it provided its answers. Beaty Construction's

---

[2] Whether CE Design belongs to professional societies could be a key factor in determining whether CE Design consented to receiving faxes from industry advertisers.

10

interrogatory #8 states: "Identify all trade associations, business organizations, or other industry groups to which you belonged during the time period." When CE Design answered the interrogatories, it reprinted question #8 as: "Identify all methods used by you during the Time period to obtain information regarding existing or potential customers and clients." This was simply a duplicate of interrogatory #9. Hence, CE Design's erroneous argument that Beaty Construction failed to ask about membership in trade organizations.

Regardless, Jon Pezl stated in his deposition that CE Design did not belong to any trade memberships or organizations despite the fact that CE Design is a member of the "Blue Book." According to Beaty Construction, this is evidence of deceit. The Court disagrees. In his deposition, Pezl stated that the Blue Book is simply a directory, similar to being listed in the phone book. If the Blue Book really is akin to the Yellow Pages, then the listing does not mean CE Design consented to receiving faxed advertisements. As the Federal Communications Commission explained:

> Fax numbers are published and distributed for a variety of reasons, all of which are usually connected to the fax machine owner's business or other personal and private interests. The record shows that that they are not distributed for other companies' advertising purposes. Thus, a company wishing to fax ads to consumers whose numbers are listed in a trade publication or directory must first obtain the express permission of those consumers.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 2003 WL 21517853 (July 3, 2003).

There are reasonable arguments on both sides regarding whether the Blue Book is a trade organization or simply a directory listing. Because neither side has furnished the

Court with a copy of the Blue Book, the Court is unwilling to bar class certification because of this issue.[3]

Finally, Beaty Construction claims that an excessively close relationship between CE Design and its lawyers raises doubts about whether CE Design "can be a strong advocate for a class as opposed to seeking to please its attorneys." (Def. Resp. Br. at 12). At the heart of this dispute is the relationship between Jon Pezl—the president of CE Design—and Brian Wanca—the potential class counsel. Beaty Construction claims there is a conflict of interest because Wanca has used CE Design's services personally and has worked for CE Design in the past. To bolster its claim, Beaty Construction relies primarily on *In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104 (N.D. Ill. 1996). In *Discovery Zone*, Judge Castillo denied class certification because the representative plaintiffs were personal stockbrokers for the attorneys representing the class. *Id.* at 108. The court found that the plaintiffs had an incentive to reject potential settlement offers and drag out the litigation, *i.e.*, the more money earned by the attorneys, the more money the attorneys would reinvest with the plaintiffs' brokerage company. *Id.* Thus, the plaintiffs were potentially at odds with the rest of the class and could not function as adequate representatives.

The Court finds no flaw in Judge Castillo's reasoning. The Court, however, does not believe that the facts in this case compel the result reached in *Discovery Zone*. Jon Pezl testified that he first met Brian Wanca 20 years ago. (Pezl Dep. at 4). Wanca

---

[3] Beaty Construction also argues that in other lawsuits, CE Design gave inconsistent answers about whether it belongs to any trade organizations. First, Beaty Construction's argument that CE Design consented to receiving faxes by virtue of its associational memberships could be grounds for summary judgment. But, this argument is out of place at this stage. Moreover, the Court is not convinced that CE Design's answers to interrogatories *in other cases* implicate the accuracy of its answers *in this case*. If Beaty Construction believes CE Design is withholding discoverable evidence or the lawyers are suborning perjury, then the appropriate remedy is to compel discovery or to move for sanctions under Rule 11.

handled the incorporation of CE Design in 1990 and functioned as CE Design's corporate attorney from 1990 until approximately 1992.[4] (*Id.* at 10). But, the relationship between Wanca and CE Design has not been a continuous one. Pezl further testified that during the 20 years he knew Wanca, CE Design formally rendered services to Wanca on only two occasions prior to the initiation of this lawsuit. The first payment from Wanca to CE Design occurred in 1988 and the second payment occurred five to seven years ago.[5] (*Id.* at 4, 5, 9). Moreover, Pezl testified that he and Wanca never saw each other socially, and that CE Design had never done any work for Wanca's legal partner, Phillip A. Block. (*Id.* at 9).

The law is a relationship-oriented, service-driven profession. Therefore, it comes as no surprise that CE Design hired an attorney with whom it had a prior, successful relationship. It does not appear that CE Design is so indebted to Brian Wanca that it would place the interests of its attorney above the interests of the company or the class. After reviewing Pezl's deposition testimony, the Court has concluded that Pezl—for whatever reason—is particularly upset by receiving unsolicited faxes and has an authentic interest in litigating these cases. For example, Pezl testified that he has sued other businesses under the TCPA because:

> To be quite honest, I am aggravated, very much so, with all of these unsolicited faxes that we get in our office, which is why I have proceeded with [this litigation] ... I have better things to be doing that sitting here, but I am really upset about the volume of these types of faxes that we receive ... because it is a distraction. It takes time, it takes money, it ties up our fax machine from other faxes that are incoming and otherwise disrupts us trying to conduct our business.

---

[4] CE Design now uses Holland & Knight as their corporate counsel. (Pezl. Dep. at 16).
[5] According to Pezl, Wanca hired CE Design's to evaluate some real estate he Wanca wanted to purchase. (Pezl Dep. at 6.)

(Def. Resp. Br. Ex 9 at pg. 32). Wisely or not, Congress has created a remedy for people angry about receiving unsolicited faxes, and so the Court must adjudicate these disputes. The Court finds that CE Design and Brian Wanca would be able to serve as fair and vigorous advocates for the class.

E.  *Predominance and Superiority under Rule 23(b)(3)*

CE Design has satisfied the requirements of Rule 23(a), so the Court must now examine whether the proposed class can be maintained under one of the subsections of Rule 23(b). CE Design seeks certification pursuant to Federal Rule of Civil Procedure 23(b)(3), which requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court notes that the predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Now, the Court must determine whether the shared attributes of the plaintiffs' claims will be the main focus of the litigation so that unitary adjudication of the claims is justified. *Id.* CE Design argues:

> [C]ommon legal issues predominate because the class members' claims arise under the same federal statute. Common fact issues predominate because the class members' claims are focused on the defendant's fax advertising campaign, which included (1) preparing standardized, form advertisements about the Hardwood Crane Mats and (2) hiring a single third-party to fax that ad to lists of businesses and their employees.

(Pl. Mot. for Class Cert. at 11). The Court agrees with CE Design.

14

In response, Beaty Construction claims, "pivotal issues of consent and receipt [of the faxes] are individualized questions, such that common issued do not predominate. These considerations require a case-by-case investigation and mini-trial on each case." (Def. Resp. Br. at 17). In *Hinman*—a recent junk fax case with a similar fact pattern—Judge Bucklo found that the plaintiffs had satisfied the predominance requirement. Once again, my colleague's reasoning is persuasive:

> As explained above in my discussion of commonality and typicality, plaintiffs' claims arise out of a common course of conduct...Common questions include whether the faxes were "advertisements" under the TCPA, whether the inclusion of recipients' fax numbers on the "leads" list establishes consent to receive the faxes, and whether defendant's acts were willful or knowing. At present, I have no reason to believe that the resolution of any individual issues will consume more time or resources than the resolution of common issues. Accordingly, predominance is met.

*Hinman*, 545 F.Supp. 2d at 810. The *Hinman* decision is not an outlier. Indeed, this reasoning was recently echoed by Judge Kocoras. In *G.M. Sign*, the defendants—who were accused of sending out unsolicited faxes— claimed the predominance requirement was not met because an individualized inquiry was necessary to determine whether the potential plaintiffs had consented to receive the faxes *G.M. Sign, Inc.*, 2008 U.S. DIST LEXIS 79827, at *16. The court, however, rejected this argument:

> As [plaintiff] points out, the claims at issue in this case arise from a uniform type of alleged violation of a single statute. Though some of the issues [defendant] identifies have the potential to require individual resolution, there can be no question that the common issues identified above will be a main focus of this case going forward.
>
> Moreover, the obstacles [defendant] perceives to predominance and superiority are largely illusory. One example is the contention that an individualized inquiry is required to ascertain membership in the class because every class member would have to adduce evidence that prior consent was not given. Such evidence would be within the knowledge of the potential class member, and a party would need a good-faith basis to believe that he or she satisfies the class definition before making a representation to this court to that effect.

*Id.* Just as in the above cases, the Court finds that the predominance requirement has been satisfied. Individualized inquiries are unnecessary because the common issue (whether the plaintiffs received unsolicited faxes during Beaty Construction's August 2003 advertising campaign) is the singular question that predominates above all else. Moreover, all these claims fall within the purview the same federal statute and arise from the alleged conduct of one defendant acting over a very short period of time.

Next, the Court must ask whether allowing this litigation to proceed as class action is the superior method of adjudication. Generally, when a large number of plaintiffs are seeking a small amount of damages, class certification is appropriate. For example, in *Mace v. Van Ru Credit Corp.*, the plaintiffs sought class certification stemming from the defendants alleged violation of the Fair Debt Collection Practices Act. 109 F.3d 338, 344 (7th Cir. 1997). The district court denied class certification on the grounds that the likely recovery would only be $12. *Id.* The Seventh Circuit reversed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Id.*

In this case, the statutory damages under the TCPA are only $500. 47 U.S.C. § 227(b)(3). *See, e.g., Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768, 777, (N.D. Ill. 2008)(rejecting defendant's claim that the damage provision is unconstitutional because "$500 'is approximately 10,000 times the actual cost of receiving a fax,' ... and noting "There is no requirement that the statutory remedy be proportional to the plaintiff's own injury ..."). Allowing plaintiffs to spread out the financial burden is especially important given the purpose behind class actions is to

"aggregate the relatively paltry potential recoveries" into something worth an attorney's labor. The Court finds that the superiority requirement has been met. *See, e.g., Hinman*, 545 F.Supp. 2d at 810 (noting in a junk fax case "that resolution of the issues on a class wide basis, rather than in thousands of individual lawsuits—which in fact may never be brought because of their relatively small individual value—would be an efficient use of both judicial and party resources."); *Sadowski*, 2008 U.S. Dist. LEXIS 41766 at *14 (finding superiority requirement is satisfied in a junk fax case because, "In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.") quoting *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 298, 303 (N.D. Ill. 2005).

F.  *Notice*

Beaty Construction's final objection to class certification hinges on the notice provision of Federal Rule 23. Rule 23 requires that the class be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(C)(2)(B). CE Design intends to provide notice via publication. Beaty Construction claims any attempt to give notice will be unsuccessful because the potential plaintiffs might not remember receiving the fax in question. This is a reasonable argument.

The Federal Rules, however, require the best notice that is "practicable" not perfect notice. The word "practicable" implies that the plaintiff should be afforded some flexibility with respect to providing notice to unknown, potential class members. This is especially true considering the list of potential plaintiffs was destroyed by either Beaty

Construction or its agent. Moreover, CE Design will be the party that has to pay for notification. The Court is well aware that CE Design's efforts to locate potential class members may come up short. Should this occur, Beaty Construction's remedy is to file a motion to decertify the class. But for now, this litigation will proceed as a class action.

### IV. Conclusion

For the reasons set forth in the preceding analysis, the motion for class certification is GRANTED.

IT IS SO ORDERED.

1/26/09
Dated

The Honorable William J. Hibbler
United States District Court